### WESTERN UNION TELEGRAPH COMPANY V. L. G. BAREFOOT.

No. 1253. Decided November 30, 1903.

**Telegram—Delivery—Special Contract.**

An agent sent to his principal a telegram concerning sale of cattle belonging to the latter and addressed, in accordance with his direction, in care of a bank which had instructions to forward it if he was out of town, of which arrangement and his own interest in the sale the agent then informed the telegraph company; the bank being closed and the addressee out of town, the message was delivered to the clerk of the hotel where he boarded and whom he had authorized to receive and forward his telegrams; and it was then forwarded to a new address given by the clerk, but imperfect, by reason of which it did not reach addressee and the sale was not consummated. In an action by the sender to recover commissions which he was prevented

from making on the sale by default of the telegraph company, held: (1) that the facts disclosed no special contract by the company with the agent to deliver only to the bank if his principal was absent; (2) that delivery to the clerk authorized by the principal to receive it, and forwarding it according to such clerk's directions was a compliance with the company's undertaking. (Pp. 161-164.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Cooke County.

The telegraph company prosecutes error on the affirmance, upon its appeal, of a judgment recovered by plaintiff in a suit against it by Barefoot.

*Wilkins, Vinson & Moore, N. L. Lindsley,* and *Geo. H. Fearons,* for plaintiff in error.—The Court of Civil Appeals erred in overruling appellant's third, fourth and fifth assignments of error, considered together, and which were as follows, to wit:

"The court erred in refusing to give to the jury the first special instruction requested by the defendant, to the effect that the jury should return a verdict for the defendant."

"The court erred in refusing to give to the jury the seventh special instruction requested by the defendant, to the effect that both D. Sullivan & Co. and the Mahncke Hotel, or its clerk or clerks, were the authorized agents of D. R. Fant to receive said message, and that a delivery of said message to either D. Sullivan & Co. or said Mahncke Hotel, or one of the agents or clerks, would be a compliance with the defendant's contract, and that if the jury believed from the evidence that the message was delivered to Ed Disselhorst, a clerk of said Mahncke Hotel, it should return a verdict for the defendant."

The verdict of the jury is contrary to, against and unsupported by the evidence, because the undisputed testimony shows that the message in question was directed to D. R. Fant, in care of D. Sullivan & Co., at San Antonio, and that when said message reached San Antonio, said Fant was absent from the city; that said Fant had instructed the Mahncke Hotel, or the clerk at said hotel, or both, to receive all messages in his absence and forward them to him at Monclova, Mexico; that said message was with reasonable diligence delivered to Ed Disselhorst, a clerk of said Mahncke Hotel, on the 13th day of January, 1901, and that said Disselhorst instructed the defendant to send said message to said Fant at Monclova, Mexico, as he had been instructed to do by said Fant, and the evidence further showed that said message was forwarded by defendant to said Fant at said Monclova in accordance with the instructions of said agent." Western U. Tel. Co. v. Houghton, 82 Texas, 561; Western U. Tel. Co. v. Jackson, 19 Texas Civ. App., 273; Western U. Tel. Co. v. Young, 77 Texas, 245; Western U. Tel. Co. v. Wofford, 94 Texas, 345; Western U. Tel. Co. v. Mitchell, 89 Texas, 441; Joyce, Electric Law, 781, sec. 743; Western U. Tel. Co. v. Redinger, 22 Texas Civ. App., 362; Western U. Tel. Co. v. Cobb,

95 Texas, 333; Given v. Tel. Co., 24 Fed. Rep., 119; Western U. Tel. Co. v. Woods, 56 Kan., 737.

Potter & Potter, for defendant in error.—If Barefoot had the right to route his message, if he had the right to bind the company by special contract to deliver it to the person named by him and none other, were not his statements, his information, and his directions to the company at the time of sending the message and its acceptance by the company equivalent in every legal aspect to making such special contract? Western U. Tel. Co. v. Turner, 94 Texas, 304; Thompson v. Western U. Tel. Co., 10 Texas Civ. App., 120; Western U. Tel. Co. v. Pearce, 95 Texas, 578.

Would the effort of the company to obey the instructions of Fant in delivering the message at Monclova relieve it from any further effort to deliver it to D. Sullivan & Co. or to Fant, after the San Antonio office had received knowledge of the failure to deliver? We think not. We think that its transmission to Monclova was simply an effort to deliver Barefoot's message to Fant, and one step in the performance of its duty to use reasonable diligence in delivering the message to Fant, and if it failed it was as much the duty of the company to make another effort as if it had gone to Fant's office and failed to find him and did not deliver. For that reason it was its duty to make the second trip to the office. Our courts have repeatedly held that one effort to deliver a message is not sufficient. They have frequently held that it is not sufficient to send a message to the particular place or particular number in a city to which it is directed. Western U. Tel. Co. v. Russel, 31 S. W. Rep., 689; Western U. Tel. Co. v. Birchfield, 15 Texas Civ. App., 427; Western U. Tel. Co. v. Cain, 40 S. W. Rep., 624; Western U. Tel. Co. v. Teague, 36 S. W. Rep., 310; Western U. Tel. Co. v. De Jarles, 8 Texas Civ App., 109.

BROWN, Associate Justice.—The Court of Civil Appeals filed the following conclusions of fact:

"Appellee Barefoot alleged and proved that on January 13, 1901, he was at Chickasha, I. T., and there delivered to the appellant company for transmission the following telegram: 'Chickasha, I. T., Jan. 13, 1901.—D. R. Fant, care D. Sullivan & Co., San Antonio, Texas: Meet me at Fort Worth Monday; will close deal for steers. Answer. L. G. Barefoot.'

"This telegram was duly transmitted and received by appellant in San Antonio at 11:18 a. m. of the day it was sent. Soon thereafter appellant's messenger took the message to the banking house of D. Sullivan & Co., the members of which firm were well known residents of San Antonio, but found the bank closed and thereupon took the message to the Mahncke Hotel, which was the regular boarding place of D. R. Fant; but D. R. Fant being absent in Mexico, the clerk, who had been authorized to receive and forward to Monclova, Mexico, messages and

letters addressed to D. R. Fant, received the telegram in question for the purpose specified; wrote the forwarding address on the back of the envelope and returned the whole to the messenger, who thereupon returned it to the receiving office and appellant forwarded the message over its telegraph line to D. R. Fant at the address given by said clerk. By reason, however, of an omission on the part of the clerk in giving the address, D. R. Fant failed to receive appellee's telegram, of which latter fact appellant was informed the next day by service message from Monclova, Mexico. Appellant made no further effort to deliver the message nor was the sending office notified of such nondelivery as was provided in such cases by one of appellant's rules.

"Fant had instructed appellee to sell for him cattle owned by Fant and situated in the Indian Territory, agreeing to give appellee as compensation therefor 50 cents per head for all cattle sold at the price named. Pursuant thereto appellee had contracted with J. M. Russell, a responsible buyer, for the sale of 2500 of said cattle at the specified price; of all which appellant's agent at Chickasha was informed by appellee at the time said telegram was delivered. Had the telegram in question been received by Fant at any time within two weeks of said January 13, 1901, said sale would have been consummated and appellee paid said commissions. Had said telegram been delivered to either of the members of the firm of D. Sullivan & Co., on January 13th, or at the banking house on any of the following days within a reasonable time (Sundays and legal holidays excluded), said telegram would have been duly forwarded to and probably received by D. R. Fant. Fant learned nothing of the telegram, however, until he returned to San Antonio, some two weeks after January 13, 1901, when it was too late; Russell in the meantime having made other arrangements. It further appears that on the morning of January 14, 1901, appellee went to Fort Worth and there remained until the night of January 15, 1901, when, not having heard from Fant, he returned to Chickasha, and on the morning of January 16th he went to the telegraph office and informed the sending agent that he had not heard anything from Fant and asked such agent if the message in question had been delivered. The agent replied: 'I know it has been delivered, because if it had not been the San Antonio office would have notified me.' Appellee thereafter made no further effort in the matter, nor did he while at Fort Worth make effort to communicate with Fant."

Counsel for Barefoot claim that he had an interest in the message sent to Fant and that he made a special contract with the telegraph company that the message should be delivered to D. Sullivan & Co., to be forwarded to Fant in case he should be absent from San Antonio. It is claimed, that, under the special contract, the message could not be delivered to any other person although authorized by Fant to receive it.

The facts found by the Court of Civil Appeals and as shown by the undisputed evidence in the case establish that the defendant in error had a pecuniary interest in the message, of which interest the telegraph

company was notified at the time the message was delivered, but the terms of the message do not constitute a special contract to deliver to D. Sullivan & Co. Barefoot testified as follows: "At the time I delivered the message I told the agent, Daniels, that I had sold Fant's cattle and that there was $1250 in it for me. I told him to send the message in care of D. Sullivan & Co., as Fant had told me that he was out of San Antonio so much to always send his messages in care of D. Sullivan & Co., as they always knew where he was and would forward the message to him." This testimony shows that Barefoot was acting as the agent of Fant in selling the cattle and in sending the telegram to him at San Antonio. The subject of the telegram was the sale of Fant's cattle, which was to be confirmed by him, and the interest of Barefoot was incidental and subordinate to that of Fant. The object in sending the message in care of D. Sullivan & Co. was to secure its delivery to Fant, and the evidence quoted proves that D. Sullivan & Co. had been selected by Fant, not by Barefoot, as the party to whom the message should be sent. The testimony of Barefoot, which is all that the record contains upon the subject, does not establish that any contract was made with the telegraph company whereby the delivery of the message was restricted to D. Sullivan & Co. in the absence of Fant himself, and we must determine the question of the proper delivery of it to another agent of Fant by the rules of law applicable to the message as it was written. This case is unlike Western Union Telegraph Co. v. Hendricks, 68 S. W. Rep., 720, in these important facts. In that case the contract was to deliver to a certain man or to send to the person addressed six miles in the country, and the delivery was made to one not authorized to receive it by either party to the message.

It is also claimed on the part of defendant in error, that the facts do not show a delivery of the message to the clerk of the Mahncke Hotel. The clerk of the hotel received the message for the purpose of executing the commission left with him by Fant, indorsed upon it Fant's address in Mexico, and verbally directed the messenger boy to forward the message to Fant to the address written thereon. This proves a delivery on the part of the telegraph company to the clerk, and, if he was authorized by law to receive it, there was a performance of the contract made with Barefoot.

The telegraph company might have delivered the message to D. Sullivan & Co. without making inquiry for Fant. W. U. Telegraph Co. v. Young, 77 Texas, 245. But having found the bank closed, it was the duty of the telegraph company to seek Fant at his place of abode and, if absent from the city, to deliver the message to any person who might be found there authorized to receive it. W. U. Telegraph Co. v. Jackson, 19 Texas Civ. App., 273. It is not denied that a delivery to Fant in person would have discharged the contract of the telegraph company, but it is contended by the defendant in error that, in Fant's absence, the message should have been delivered to D. Sullivan & Co. The latter had no interest in the message and could not have exercised any control

over it except to receive and forward it. It was sent in their care merely as a medium through which to reach Fant. Telegraph Co. v. Pearce, 95 Texas, 578; Thompson v. Telegraph Co., 10 Texas Civ. App., 120. By directing the clerk of the Mahncke Hotel to forward all messages that might be brought to the hotel for him, Fant made the clerk of that hotel his agent to receive such messages as might be presented to him, upon which fact arises the question, did Fant have the power to authorize another person to receive this message which he had previously directed to be sent in the care of D. Sullivan & Co.? There is no reason why Fant should not have two agents in San Antonio to forward messages to him, nor is there any reason why a delivery to either agent would not bind Fant. If when the messenger went to the hotel he had refused to deliver the message to the clerk, could there be a doubt that the company would be liable to Fant for any damage he might have sustained by the failure to deliver the message to his duly authorized agent? In this case the paramount object in sending the telegram was to serve the interest of Fant, to notify him of the making of a contract subject to his approval, and it can not be that the authority of the principal to control such a contract would be subordinated to that of his agent, who sent it according to the direction of and in the interest of his principal.

Counsel for Barefoot rely much upon the case of Western Union Telegraph Co. v. Turner, 94 Texas, 304. In that case a cotton buyer delivered to the telegraph company a message accepting the terms of a proposed contract for the sale of cotton and directed that his message should be delivered to a certain telephone company, which extended from a station on the line of the telegraph company to the place where the person addressed lived. The telegraph company delivered the message to the agent of another telephone company that reached the same place, which failed to deliver it in time, whereby the sender lost his bargain. It will be seen that the facts are very different from this case. In the Turner case neither the sender nor the addressee had authorized the delivery of the message to the telephone company which made the failure. The two cases are so dissimilar that the Turner case can not be considered as authority in this case.

We are of the opinion that the delivery to the clerk of the Mahncke Hotel at San Antonio was a full and complete performance of the contract made between Barefoot and the telegraph company, and that Barefoot is not entitled to recover anything on account of the failure of that clerk to give the proper direction for the transmission of the telegram to Fant at Monclova, Mexico. It is therefore ordered, that the judgments of the District Court and of the Court of Civil Appeals be reversed and that this cause be remanded.

                                        *Reversed and remanded.*