Western Union Telegraph Company v. Dick Bryant et al.

Decided April 13, 1904.

**Telegram—Delivery.**

The undertaking of a telegraph company with the sender of a message being for personal delivery to the addressee, and not carried out by reason of the failure of the sender to pay the charges beyond free delivery limits when notified thereof, the fact that the message was addressed by the operator to the care of another person, within free delivery limits, to enable the proper address to be ascertained by the company from him, did not make it the duty of the company to deliver to such other person; and parol evidence was admissible to explain the true contract and why the message was addressed in his care.

Appeal from the District Court of Upshur.    Tried below before Hon. R. W. Simpson.

*Young & Stinchcomb* and *Geo. H. Fearons,* for appellant.

*Warren & Briggs,* for appellee.

KEY, Associate Justice.—This is a suit to recover damages for mental anguish caused by the failure to deliver a telegram.    From a verdict for the plaintiff for $500 the defendant has appealed, and the case is submitted in this court on the judge's findings of fact, which are as follows:

"1.    The message read:    'Ashland, Texas, March 6, 1903.—To Dick Bryant, Care John King, Grand Saline, Texas:   Come at once. Papa was killed by train this morning.   (Signed)   Jno. Purdy.'

"2.    At the request of John Purdy, Bun Roe and Jack Overstreet went to the office of defendant at Ashland, Texas, to send the message to Dick Bryant, for the purpose of having Mrs. Ada Bryant, Dick Bryant's wife, come to the burial of the person mentioned in the message as "papa," the deceased being Joe Barnes, the father of Mrs. Ada Bryant.

"3.    At the time the message was filed, Jack Overstreet and Bun Roe told the defendant's agent at Ashland that Mrs. Ada Bryant was the daughter of the person mentioned in the message as being killed, and told said agent that the message was being sent for the purpose of having Mrs. Ada Bryant come to his funeral.

"4.    When Jack Overstreet and Bun Roe went to the defendant's office at Ashland to send the message, they told the defendant's agent they wanted the message delivered to Dick Bryant, and that John King could give information as to where to find Dick Bryant, and the defendant's agent understood that they wanted the message delivered to Dick Bryant.

"5.    The words 'Care John King' in the message were written by defendant's agent at Ashland, Texas.

"6.    On March 6, 1903, the defendant company had regularly estab-

lished free delivery limits at Grand Saline, Texas, which were one-half mile each way from defendant's Grand Saline office, and on said day Dick Bryant was not within such free delivery limits.

"7. When defendant's agent at Ashland accepted the message for transmission, Jack Overstreet paid the charges for transmitting the message to Grand Saline, and it was understood between Jack Overstreet, Bun Roe and the defendant's agent, that defendant's agent should find out what the special delivery charges would be to have the message delivered to Dick Bryant, and that they would call back that afternoon and the agent could tell them what it would cost to have the message delivered to Dick Bryant.

"8. The defendant's Ashland agent transmitted the message, as written, to Grand Saline, and sent a service message following it, asking what the special delivery charges would be to deliver the message to Dick Bryant. The defendant's agent at Grand Saline informed the defendant's Ashland agent that it would cost $2 to deliver the message to Dick Bryant. Overstreet returned to the defendant's Ashland office that afternoon to find what the special delivery charges would be; the defendant's agent informed him, but Overstreet did not pay the amount.

"9. The special delivery fee of $2 was not paid, nor was there any contract between the agent and the senders that it would be paid.

"10. John King was within the defendant's regularly established free delivery limits at Grand Saline on March 6, 1903, and by ordinary care the defendant's Grand Saline agent could have delivered the message to him.

"11. The message could, with ordinary care, have been delivered to John King on March 6, 1903, in reasonably sufficient time for the message then to have been sent to Dick Bryant and for Dick Bryant and his wife to go to Grand Saline and take a train that, with its connections, would put them in Ashland in time for the burial of Joe Barnes, and that they would have gone to said burial, if they had so received the message.

"12. At about 3 o'clock p. m. of March 6, 1903, John King was informed that defendant's Grand Saline agent had a message addressed to Dick Bryant in his care, and was informed that the message contained information that Dick Bryant's father had been killed. King did not go to the defendant's Grand Saline office and ask for the message, nor did he take any steps towards sending Bryant any word about the message, though he had plenty of time, after being informed of the message, to send Bryant the message or word about the message, in time for Bryant and his wife to go to Grand Saline and take a train that would, with its connections, place them at Ashland in time for the burial.

"13. Mrs. Ada Bryant suffered mental anguish by reason of not being at the burial of her father."

*Opinion.*—In addition to the facts found by the court in the fourth

and fifth paragraphs of the findings, there was clear and uncontradicted testimony given by the plaintiff's two witnesses who acted for John Purdy in sending the message, and appellant's agent who received and transmitted it, to the effect that it was understood and agreed between them at the time the message was sent, that it was not to be delivered to John King, and his name was placed on the message as a mere matter of reference to enable appellant's agent at Grand Saline to ascertain where Dick Bryant resided.

This court holds that the parol evidence referred to was admissible, and that it establishes facts showing that appellant did not agree and was not bound to deliver the message to John King. Western U. Tel. Co. v. Barefoot, 97 Texas, 159, 76 S. W. Rep., 914. This holding leads to the conclusion that appellees have no cause of action against appellant; and therefore the judgment appealed from will be reversed and judgment here rendered for appellant.

*Reversed and rendered.*