## MURRAY v. WESTERN UNION TEL. CO.

TELEGRAPH COMPANIES—PRINCIPAL AND AGENT—PUNITIVE DAMAGES.—If the sender of a telegram transmit it by another, not connected with the telegraph company, by telephone to the telegraph company, and the telegraph company transmit the reply message to the person by whom the sender forwarded the first message, the company is not liable to the sender for punitive damages for non-delivery of the reply message to addressee.

Before MEMMINGER, J., Charleston, July, 1905. Reversed.

Action by R. J. Murray against Western Union Telegraph Company. From judgment for plaintiff, defendant appeals.

*Messrs. Geo. H. Ferrons, Evans & Finley* and *Smythe, Lee & Frost,* for appellant. The latter cite: *The plaintiff suffered no damage for which defendant is liable:* 72 S. C., 356; 69 S. C., 550; 67 S. C., 293; 72 S. C., 290. *There is no evidence of wilful or wanton conduct:* 72 S. C., 256; 69 S. C., 444, 445; 68 S. C., 98; 72 S. C., 343. *If message be delivered to company by agent of sender, company may deliver reply to same person:* 42 S. C., 819; 76 S. W., 914; 17 S. W., 847; 27 Ency., 2027.

*Messrs. W. Turner Logan* and *John P. Grace,* contra: *There was evidence on which to base punitive damages:* 72 S. C., 263. *Delivery by telephone is not good:* 27 Ency., 2 ed., 1028.

April 6, 1906. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. This is an action commenced on the 18th of January, 1905, for actual and punitive damages arising from the alleged failure of the defendant to deliver a telegram. It came on for trial before Judge Memminger and a jury. A verdict was rendered for $800 damages. After entry of judgment the defendant appealed

therefrom upon seven grounds.    From the record it appears
that the mother of plaintiff was old and blind, that she had
intermarried with one March Heyward.

On January 6th, 1905, the following telegram was sent:

"Beaufort, S. C.
"To Robert Murray, 36 Ashton St., Charleston, S. C.

"Mother dying, come at once.        March Heyward."

Which message was delivered about 11.10 A. M., and on
the back of said telegram the following answer was sent at
11.10 A. M.:

"March Heyward, care of J. J. Washington, Beaufort, S. C.

"Let me know worse.                Robert J. Murray."

This telegram was marked paid.    No answer to this tele-
gram was ever received by Robert J. Murray, though he
telephoned inquiries for the same.    On the morning of the
7th of January, Robert J. Murray sent a telegram addressed
to the Rev. P. P. Watson, Beaufort, S. C.:

"Please inquire of my mother's illness and let me know
at once."

At between 12 M. and 2 P. M., this answer was received
to such telegram:

"Your mother is ill; come at once.        P. P. Watson."

The plaintiff at once started by rail to Beaufort, S. C.,
reaching there about 7 P. M., and found that his mother was
dead, having died at about 3 P. M. of same day.    The plain-
tiff was greatly distressed at not seeing his mother in life,
and at once inquired why his telegram to March Heyward
had never been answered.    March Heyward said that he
had never received it nor had J. J. Washington, in whose
care it had been sent.

The defendant contended that it had sent the telegram
to Mark Keyserling about 12 M. on the 6th of January,
the said Keyserling residing on Lady's Island, where March
Heyward lived, and the said Mark Keyserling said he had
received the said telegram over the telephone at about 12
M., and had communicated the same to March Heyward.

5—74

This was denied by March Heyward. The plaintiff contended that if the said message had been transmitted to the said March Heyward he would have answered the same promptly, and thus enabled the plaintiff to reach the bedside of his dying mother either by the 3 o'clock train on the afternoon of the 6th or on the 7 o'clock train the next morning, in time to have seen his mother in life.

The plaintiff alleged that by reason of the negligence, wanton, wilful and outrageous conduct of the defendant corporation, he was deprived of the great and inestimable privilege of being with his mother in her last hours and while she was alive and conscious, and was thereby subjected to great mental anguish and suffering to his damage $1,500.

The defendant in his answer denied the allegations of the complaint except the death of plaintiff's mother.

The exceptions are as follows:

"1. Because his Honor erred in refusing to charge the first request of the defendant, to wit: 'That the undisputed evidence shows that the plaintiff suffered no damage arising from the negligence of the defendant for which he is entitled to be compensated.'

"2. Because his Honor erred in refusing to charge the second request of the defendant, to wit: 'That there is no evidence that the defendant was guilty of wilful and wanton conduct, and, therefore, the plaintiff is not entitled to punitive damages.'

"3. Because his Honor erred in refusing to charge the fifth request of the defendant, to wit: 'That the defendant must use due diligence to deliver a message to the addressee as promptly as possible; and where the sender of a message is illiterate and lives at a different town from that in which the defendant's office is located and gets his agent to telephone a death message to the defendant's office to be transmitted by telegraph to the addressee; and the addressee replies at once, then the defendant's agent is justified in tele-

phoning this answer to said agent and performs its duty in so doing.'

"4. Because there was no evidence to justify the jury in finding a verdict for punitive damages, for the reason that there was no evidence from which wanton or wilful conduct on the part of the defendant could be inferred, and his Honor erred in refusing to so charge the jury.

"5. Because there was no evidence to justify a verdict for actual damages, for the reason that the right of the plaintiff to recover actual damages is based solely upon the allegation in paragraph 5 of complaint, to the effect that if the addressee had received the message which plaintiff claims was not delivered, said addressee would have sent the plaintiff a message in reply, 'informing him (the plaintiff) that his mother was dying and he must come at once if he wished to see her alive;' whereas, the uncontradicted and admitted evidence shows that the plaintiff was already possessed of that identical information.

"6. Because there was no evidence to justify any verdict against the defendant, in that (a) The entire and uncontradicted evidence shows that plaintiff suffered no actual damages by reason of any default of the defendant; and (b) Because there was no evidence from which a jury could infer wilful or wanton conduct which would justify a verdict for punitive damages.

"7. Because his Honor erred in not granting a new trial on the grounds set forth in the motion therefor."

We will now pass upon these exceptions.

We should state that the defendant made a motion for a new trial based upon the alleged errors of the Circuit Judge in his charge to the jury in regard to punitive damages.

The 2d, 4th and (b) of the 6th relate to punitive damages. A careful study of the case shows to us that the Circuit Judge erred in regard to punitive damages. There is no question between these parties that the plaintiff has the right to recover for punitive damages in case the defendant was guilty of wilful or wanton conduct towards the plain-

tiff. The serious question is, Was there evidence of wilful or wanton conduct? We do not find that there was such evidence, and if there was no such evidence of punitive damages it was the duty of the Circuit Judge to so charge the jury. *Machen* v. *Tel. Co.,* 72 S. C., 256; *Gwynn* v. *Tel. Co.,* 69 S. C., 444; *Pickett* v. *Ry. Co.,* 69 S. C., 445, and other cases. There was no such evidence.

The first message was delivered to the plaintiff on the morning of January 6th. The plaintiff answered the same asking them to telegraph him the worst. That dispatch was sent to Beaufort and by the agent at Beaufort sent to the agent of March Heyward, Mr. Keyserling, and by him received about 12 M. on the 6th. Just at this point there is a discrepancy in the testimony as to its delivery by Keyserling to March Heyward. On the 7th of January, the plaintiff sent a dispatch to Rev. P. P. Watson which was delivered and replied to, enabling the plaintiff to reach Beaufort promptly after the death of his mother.

If there was any fault of the telegraph company it was owing to its Beaufort agent sending the dispatch for March Heyward to Mr. Keyserling, but this was done by the telegraph company because Keyserling was the agent through whom March Heyward had sent his dispatch to the plaintiff. Mr. Keyserling was a man of character, in nowise connected with the Western Union Telegraph Company, and postmaster at Wilkins P. O., on Lady's Island. The case of *Western Union Tel. Co.* v. *Barefoot* (Texas), 76 S. W., 914, is in point; in that case it appeared that a reply telegram was delivered to the agent of the plaintiff and he failed to send the dispatch in the proper way to the plaintiff, the Court held that the defendant was not liable.

In the case at bar, the Circuit Judge, inadvertently, of course, failed to convey to the jury this point.

There must be a new trial, and it will be better for us to avoid any further reference to the facts of the case or charge.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed and the case remitted to that Court for a new trial.