WESTERN UNION TELEGRAPH CO. *v.* FRANKLIN *et al.**

(*Jackson.*   April Term, 1914.)

1. **TELEGRAPHS AND TELEPHONES.** Nondelivery of message. Actions. Evidence. Sufficiency.

In an action for damages for nondelivery of a death message, evidence *held* insufficient to show that defendant's messengers made inquiries at the address given in the message. (*Post, pp.* 658-660.)

2. **TELEGRAPHS AND TELEPHONES.** Delivery of messages. Inquiries.

Where a telegraph message contained no intimation that the addressee had an agent to receive it at the place to which it was sent, the telegraph company's messenger need not make inquiries as to whether there is such an agent, but the agent should reveal himself in case of inquiry at the place of address. (*Post, pp.* 660-661.)

Cases cited and approved: Western Union Telegraph Co. v. Redinger, 66 S. W., 485; Western Union Telegraph Co. v. Cobb, 95 Tex., 333; Western Union Telegraph Co. v. Barefoot, 97 Tex., 159; Western Union Telegraph Co. v. Mitchell, 91 Tex., 454; Lyles v. Western Union Telegraph Co., 84 S. C., 1; Telegraph Co. v. McCaul, 115 Tenn., 99.

3. **TELEGRAPHS AND TELEPHONES.** Messages. Delivery agent.

A telegram cannot be delivered to any one but the addressee, unless he has appointed an agent to receive it, or there is a custom warranting delivery to another. (*Post, pp.* 660, 661.)

4. **TELEGRAPHS AND TELEPHONES.** Delivery of messages. Duty of telegraph company.

---

*On the contingency of possible action of sendee, or of some third person, as affecting liability for failure properly to transmit and deliver a telegram, see note in 12 L. R. A. (N. S.), 748.

A telegraph company should, if possible by a reasonable effort, deliver messages personally to the addressee. (*Post, pp.* 660, 661.)

5. **TELEGRAPHS AND TELEPHONES.** Nondelivery of messages. Actions. Defenses.

Where the addressee of a death message had an agent who was to bring it to her from the place of address, and the telegraph company's messenger failed to make inquiry or to offer the message for delivery at the place of address, the company cannot escape liability for nondelivery on the theory that the addressee's agent might not have performed her duty, or might not have been at the place of address when the inquiries were made. (*Post, pp.* 661, 662.)

---

FROM SHELBY.

---

Error to the Circuit Court of Shelby County from the Court of Civil Appeals, and error to the Court of Civil Appeals from the Supreme Court.—A. B. PITMAN, Judge

GREER & GREER for plaintiff in error.

BELL, TERRY & BELL for defendants in error.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The defendants in error are husband and wife. They recovered a judgment in the circuit court of Shelby county against the plaintiff in error for $500 damages, for failure to deliver the following telegram, sent from Memphis, Tenn., to Mobile, Ala.:

129 Tenn. 42

· "April 6, 1912.

To Mrs. Louis Franklin, 650 Davis Ave., Mobile, Ala.

Father dead. Let me know if you can come. Answer.

WALTER SOUTHALL.

The sendor of the telegram was the brother of the sendee.

The message reached Mobile the same night, and was placed in the hands of a night messenger boy at 11:30 p. m. He testified that he went to No. 650 Davis avenue and Oak street, that he saw several colored men standing at the corner, and inquired of them if they knew Mrs. Louis Franklin, and they replied that they did not, and that no one by that name lived in that neighborhood. He then inquired on the next corner, and at three or four houses in the same block—in the 650's spending in all about twenty-five minutes in the search. He then returned the message to the office. The next morning a day messenger boy went to the same corner and made inquiry. He testified that he went to a house two or three doors the other side of No. 650, and there found George Houston and Helen Carroll, and they both told him they did not know any such person as Mrs. Louis Franklin.

Discredit, however, is thrown upon the testimony of these messenger boys by the fact that Helen Carroll lived in the next house to the storehouse on the corner, and the No. 650 was on this next house, and not on the storehouse. Both she and her husband, Gus Carroll, and George Houston, lived in this house; also Mary Hutchison, George Hutchison, and Ulysses

Hutchison, the mother and two brothers of Helen Carroll, and all of these people were acquainted with the sendee. It further appears that the sendee had, about a month before the time in question, taken up her residence in Mobile, nearly a half a mile beyond No. 650, and had specially requested of Helen Carroll and her husband to permit her mail to be delivered at No. 650, and exacted a promise of Helen and her husband that they would transmit her mail to her residence. She had also informed Carroll and wife that her father was very ill, and that she was expecting, at any time, a telegram announcing his death, and had instructed that this telegram be sent to No. 650, and asked that, if it came, it be transmitted to her. As a matter of fact, several letters did come to No. 650, addressed to Mrs. Louis Franklin, and were caused by Helen Carroll to be immediately conveyed to her by the hand of one of Helen's brothers, or her husband. In view of these facts, it is incredible that Helen Carroll told the messenger boys she did not know Mrs. Louis Franklin, or that George Houston said anything of the kind. There is evidence in the record, therefore, from which it may be inferred that the messenger boys never in fact visited the house, No. 650, but probably inquired only at the corner. The mistake possibly occurred from the fact that the city directory gave the corner storehouse as No. 650, although it was not so marked—indeed, was not marked at all—while the next house to it, between which house and the store a vacant lot intervened, was really numbered 650.

We think, therefore, that neither of the messenger boys visited No. 650. If they had inquired at that house, we have no doubt they would have learned from its inmates that Mrs. Louis Frankin did not reside at that place, and was not there at the time, and that her home was half a mile further out, beyond the free delivery limits of the telegraph company.

They would probably have learned, also, that the sendee had made Helen Carroll and her husband, Gus Carroll, her agents to receive and forward the telegram. If they had been so informed, and such information seemed reasonable, they would have been justified in leaving the message. It is true the company had no intimation of any kind that such agency existed; therefore it would not have been incumbent upon the messengers to inquire for the agents. It was held in *Western Union Telegraph Co.* v. *Redinger* (Tex. Civ. App.), 66 S. W. 485, and we think correctly, that where such agency has been conferred it is the duty of the agent, when inquiry is made as to the whereabouts of the principal, to inquire of the telegraph messenger whether he has a message for the principal, and to inform him of the agency. The message could not have been left with any one at No. 650 without information of the agency. For example, a telegram cannot be delivered to the clerk of the hotel at which the sendee is living, unless the hotel clerk has been authorized by the sendee to receive it, or unless such is the known custom of business at the hotel. *Western Union Telegraph Co.* v. *Cobb,* 95 Tex., 333, 67 S. W. 87, 58 L. R. A., 698,

93 Am. St. Rep. 862. But, of course, where the sendee has made any one his agent, as, for example, the clerk of a hotel, to receive and forward his telegrams, it is the duty of the company to recognize such agency and make delivery accordingly. *Western Union Telegraph Co.* v. *Barefoot,* 97 Tex., 159, 76 S. W. 914, 64 L. R. A. 491.

The leading principle, of course, is that the delivery must be made personally to the sendee, if that can be effected by the exercise of reasonable effort. *Western Union Telegraph Co.* v. *Mitchell,* 91 Tex. 454, 44 S. W. 274, 40 L. R. A. 209, 211, 66 Am. St. Rep. 906. But, as stated, delivery might be made to an agent, under the circumstances already indicated (*Western Union Telegraph Co.* v. *Whitson,* 145 Ala., 426, 41 South. 405; *Lyles* v. *Western Union Telegraph Co.,* 84 S. C., 1, 65 S. E. 832, 137 Am. St. Rep. 829), or should be delivered to one in whose care it is addressed (*Telegraph Co.* v. *McCaul,* 115 Tenn., 99, 90 S. W. 856).

It is possible, of course, that on inquiry at No. 650 the messenger might have encountered some resident of the building other than Helen Carroll and her husband, or her brothers, and from these might have learned only the fact that the sendee was not there, and the duty would then have existed only to make further inquiry elsewhere. It is possible, also, that, even if inquiry had been made of the Carrolls, or of the other persons who were acquainted with the agency, the message, although received, might not have been forwarded. This latter supposition, however, seems

wholly improbable, because the custom had been to forward letters promptly, in accordance with the duty assumed by the acceptance of the agency.

It is true that such contingencies were involved as above indicated. But we think there is no doubt the plaintiff in error breached its duty when its messengers failed to apply at No. 650. It may be that, if inquiry had been so made, no information would have been elicited, except that the sendee was not at the address. On the other hand, the question asked might have developed information of the agency. Having failed in the primary duty of making inquiry at the address given, we think it does not lie in the mouth of the plaintiff in error to speculate on the contingencies that might have arisen if such inquiry had been made. Where we can see that, if inquiry had been made, it is probable there might have been a legal delivery effected, this is sufficient. From the evidence we are quite sure that, if Carroll and wife had been inquired of, they would have communicated their agency, and, on delivery of the telegram to them, would have promptly forwarded it to the sendee, and that she would have reached Memphis in time to have attended the funeral of her father.

We therefore think the judgment of the court of civil appeals must be affirmed.