6551

## LYLES v. WESTERN UNION TEL. CO.

1. TELEGRAPH COMPANIES—MENTAL ANGUISH—NOTICE.—Where a message on its face informs the company that a death had taken place, and the sender sought to provide for a prompt reception of the body, there was notice that a failure to deliver promptly would result in some want of proper care and attention to the body, and that mental suffering would result to some one connected with the message, or having a deep interest in the purposes sought to be accomplished, but from such message it could not be inferred that failure to promptly deliver would result in a burial without the usual and customary rites.

2. IBID.—IBID.—IBID.—Telegraph company is chargeable with notice of the relationship between the sender and the person named in the message as ill or dead, and that mental suffering would result from failure to deliver promptly.

3. IBID.—If a telegraph company finds the addressee of a message lives beyond the free delivery limit, it is its duty to notify the sender and require additional compensation, and it is only relieved of the duty to deliver by refusal to pay the additional compensation.

4. IBID.—TELEPHONE.—A telegraph company may make a special contract to deliver a message by telephone.

5. IBID.—CONSIDERATION.—Payment of charges for transmitting and delivering a message after an agreement to notify sender of failure to deliver promptly supports promise to give notice of non-delivery.

6. REHEARING *refused.*

Before KLUGH, J., Fairfield, March, 1906.   Affirmed.

Action by L. C. Lyles against Western Union Tel. Co. From judgment overruling demurrer, defendant appeals.

*Messrs. Geo. H. Fearons, Evans* and *Finley,* and *Buchanan & Hanahan,* for appellant. *Mr. Buchanan* cites: *This case does not fall within the mental anglish statute:* Thomp. on Elec., sec 402; 40 S. C., 524; 70 S. C., 418; 73 S. C., 218. *Mental anguish caused by the manner of interment cannot be basis of an action:* 34 Am. St. R., 831; 2 Thomp. Neg., sec. 2483; 73 S. C., 218; Woods Mayne

Dam., 74; Sher. & Redf. Neg., sec 606; 70 S. C., 543; 34 Am. St. R., 831; 3 C. C. A., 73. *No action for continued anxiety:* 75 Tex., 26; 91 Tex., 206; 70 S. C., 423; 71 S. C., 33; 70 S. C., 539; 73 S. C., 218. *No special contract to deliver beyond delivery limits:* 70 S. C., 83; 4 McC., 323; 71 S. C., 31; Bliss Code Pl., 268; Grays. Com. by Tel., secs. 28, 27; 70 S. C., 83; Thomp. on Elec., sec. 282. *No notice of special damages:* 70 S. C., 422; 73 S. C., 221.

*Messrs. Marion B. Jennings* and *J. E. McDonald,* contra. *Mr. Jennings* cites: *Company is charged with notice of relation between sender and one stated in the message as dead:* 45 L. R. A., 162; 62 S. C., 230. *Message was sent for benefit of plaintiff:* 62 S. C., 230. *Company should have sent service message to sender of failure to deliver:* 117 N. C., 352; 126 N. C., 311; 47 S. E., 492.

The opinion in this case was filed September 17, 1906, but remittitur held up on petition for rehearing until

June 3, 1907. The opinion of the Court was delivered by

MR. JUSTICE JONES. As this appeal is from an order overruling a demurrer to the complaint for insufficiency, we set out the complaint and the specifications of the demurrer as follows:

"The plaintiff herein complains and alleges:

"1. That the defendant is, and was at the time hereinafter mentioned, a corporation under the laws of the State of New York, engaged in the business of telegraphing for hire and having, owning and operating its line in the State of South Carolina, and in the county aforesaid, having offices at Columbia and the small town of Rockton, in the said State.

"2. That on the first day of July, 1903, in the early afternoon of the said day, G. B Gibson, a brother-in-law of the plaintiff, presented to and filed with the defendant at its

office in the city of Columbia, for transmission and delivery for the benefit of the plaintiff, a message which was as follows: 'Columbia, S. C. To L. B. Burley, Rockton, S. C. Charlie died to-day, meet at Bookman's to-morrow. L. C. Lyles.'

"3. That the said 'Charlie' mentioned in the said message was the husband of the plaintiff, and that the said message was prepaid at the time after an understanding with the defendant that the same would be promptly transmitted and delivered, and that in case the same was not delivered promptly defendant would advise the plaintiff thereof; the defendant making a memorandum at the time of the name and address of the plaintiff.

"4. That the defendant well knew the importance of delivering to the plaintiff promptly any reply that might be sent to the said message, and well knew the importance of delivering promptly to the plaintiff any information that might be sent to its office at Columbia with reference to a failure of delivery of the said message.

"5. That the plaintiff had made all necessary arrangements with the defendant through its agent at Rockton for a prompt delivery of the said message before the same was presented to and filed with the defendant at its office in Columbia.

"6. That plaintiff is informed and believes that the said message was received at Rockton in the early afternoon of the said first day of July, but that through the wilful, wanton and gross negligence of the defendant the same was never delivered to the said J. B. Burley.

"7. That it is, and was at the times herein mentioned, the custom of the defendant to deliver messages received by it at Rockton over or by telephone, and it should have done so here.

"8. That defendant's agent at Rockton sent a reply to defendant's agent at Columbia, which was as follows: 'Yours dated Burley signed Lyles undelivered. Party lives about ten miles in country. Rockton, S. C., 1st.' That

the defendant should have promptly delivered the same to the plaintiff.

"9. That notwithstanding the reply, or office message so sent by the defendant's agent at Rockton, the defendant wilfully, wantonly and grossly neglected to deliver the same to this plaintiff until very late in the afternoon of July 2d, 1903, although the plaintiff was at her home and residence, No. 1021 Pendleton street, Columbia, S. C., during the whole night of July 1st and the whole of the day of July 2d, 1903, and within easy reach of the defendant, and within the limits of its regular delivery limits.

"10. That by reason of the wilful, wanton and gross negligence and failure of the defendant to deliver the aforesaid messages, upon arrival of the plaintiff's family and children, together with the mortal remains of her said husband, at Bookman, there was no one to meet them with conveyances to carry them to the family burying ground or to the said J. B. Burley's residence, and that the body of plaintiff's deceased husband was obliged to lie for hours exposed to the hot sun.

"11. That the aforesaid J. B. Burley is a brother of the plaintiff, and would have met the family and mortal remains of the plaintiff's husband at Bookman had the aforesaid message to him been delivered, but that by reason of the aforesaid wilful, wanton and gross negligence of the defendant in failing to deliver the said message, the said J. B. Burley was not aware of his brother-in-law's death, and was not aware that the mortal remains of plaintiff's husband had been brought to the said Bookman, a flag station on one of the branch roads of the Southern Railway.

"12. That by reason of the aforesaid wilful, wanton and gross negligence of the defendant in delivering the aforesaid message, plaintiff's husband was buried at a very late hour of the night, and plaintiff was hindered and deprived of the right to have her said deceased husband buried in accordance with the usual and customary burial rites.

12—77

"13. That by reason of the aforesaid wilful, wanton and gross negligence on the part of the defendant in failing to deliver the aforesaid messages this plaintiff has suffered great mental anguish and pain, being made sick and forced to take her bed and sustained great nervous shock, to her damage one thousand nine hundred and ninety-nine dollars.

"14. That on the 4th day of August, 1903, this plaintiff presented her claim to the defendant in writing for the said sum of one thousand nine hundred and ninety-nine dollars, but the defendant has failed to pay the plaintiff the said sum, or any part therof, and has wholly ignored plaintiff's said claim.

"Wherefore plaintiff demands judgment against the defendant in the sum of one thousand nine hundred and ninety-nine dollars, and for the costs of this action."

The specifications of the demurrer to the complaint are:

"(a) That this is not an action coming under the mental anguish act.

"(b) The alleged wrongful or negligent act or omission did not prevent the plaintiff from being at the funeral of her husband.

"(c) That such message was not intended for her own benefit.

"(d) That such message, if for the benefit of any one, was for the benefit of J. B. Burley, and at most was but an invitation to meet the funeral party at Bookman, and there was no evidence of any notice to the company that any special damages would result by non-delivery.

"(e) That it affirmatively appears that J. B. Burley, the addressee, lived beyond the free delivery limits of Rockton, and the use of the telephone was necessary to delivery, and there is no allegation of any deposit or consideration for transmission beyond defendant's wires, and if any contract had been made it would have been *ultra vires* and contrary to public policy.

"(f) That there was no consideration alleged for the return message and information.

"(g) That the alleged damage, if any occurred, was not the direct and proximate result of the alleged default of the defendant, and it affirmatively appears that the plaintiff was not to meet J. B. Burley at Bookman, nor was it intended to obtain information to enable her to attend the funeral.

"(h) That the complaint shows that the defendant is not liable to the plaintiff, and the complaint does not show any liability to the plaintiff."

These grounds of demurrer having been overruled, defendant renews them here by its exceptions.

A telegraph company is liable in damages for mental anguish directly resulting from its negligence in receiving, transmitting or delivering a message relating to personal or social matters as distinguished from business matters, when such suffering should have been reasonably anticipated by the company, either from the nature and terms of the message or from information had or received at the filing of the message. *Arial* v. *Tel. Co.,* 70 S. C., 422, 50 S. E., 6; *Capers* v. *Tel Co.,* 71 S. C., 29, 59 S. E., 537; *DuBose* v. *Tel. Co.,* 73 S. C., 221, 53 S. E., 175; *Carter* v. *Tel. Co.,* 73 S. C., 430, 53 S. E., 539. It is not essential that the company have detailed information of every specific matter which may cause mental suffering. It is sufficient if, from the general information had, the company had reason to anticipate mental suffering to result in the particulars alleged from its failure to perform its duty.

The message in this case on its face informed the company that a death had taken place and that the sender sought to provide for a prompt reception of the body at Bookman with a view to its burial somewhere. Judged by the standard applied to reasonable men the company, from the nature of the message, was bound to take notice that a failure to deliver it promptly would probably result in some want of proper care and attention to the body and some delay in the burial, if the arrangement to that end sought to be made by the sender should miscarry, and by the same standard the company was bound to take notice that mental suffering

would probably result to some person connected with the message and having a deep interest in the purposes sought to be accomplished thereby.   To that extent, therefore, that the complaint alleged mental suffering by the exposure of the body to the hot sun for several hours and the delay of the burial to a very late hour of the night as the result of the alleged negligence of the defendant it stated a cause of action.   *Carter* v. *Tel. Co.,* 73 S. C., 430, 53 S. E., 539.

We are, however, not inclined to hold there was anything either on the face of the message or otherwise communicated to defendant, from which it could reasonably anticipate that a failure to deliver the message promptly would result in a burial without "the usual and customary burial rites." *Western Union Tel. Co.* v. *Carter,* 34 Am. St. Rep., 831. To this extent the complaint may be subject to criticism, but the demurrer was, nevertheless, properly overruled if the complaint states a cause of action on other grounds.

The complaint is not based upon any claim that the plaintiff was prevented from attending the funeral of her husband, and this specification may go out of consideration as irrelevant.   Nor is there any claim made in behalf of Burley, the addressee of the message, because of any interest he may have had therein.   The plaintiff, as sender of the message, sues by reason of her interest in and connection with the message.   The telegraph company is chargeable with notice of the relationship between the sender and the person named in the message as ill or dead. *Tel. Co.* v. *Carter,* 34 Am. St. Rep., 826.   The complaint expressly alleges that the message was filed with defendant "for the benefit of the plaintiff;" and it is further alleged that defendant agreed to promptly advise plaintiff in case the message was not delivered promptly, and was well aware of the importance of so doing; and it is still further alleged that the plaintiff had, previous to the filing of the message at Columbia, made arrangements with the defendant through its agent at Rockton for a prompt delivery of such message.   These matters were sufficient to inform defend-

ant that plaintiff, as sender of the message, had a serious interest in its prompt delivery, and because of her relationship to the deceased would suffer mental anguish if not so delivered.

But it is contended that the complaint shows that the addressee lived beyond the free delivery limits of Rockton, and that there is no allegation of any deposit or consideration for transmission beyond defendant's free delivery limits. The complaint shows prepayment of charges for delivery of the message at Rockton and that defendant undertook to so deliver it. It does not appear what are the free delivery limits about Rockton, which is said to be a small town, but it is alleged that arrangements had been made with the defendant's agent at Rockton to promptly deliver the message. It appears from the return message sent to the transmitting office by the Rockton office that the message was not delivered because the addressee lived ten miles in the country, and it is reasonable to infer that the addressee lived beyond the free delivery limits. When a telegraph company discovers that the person for whom the message is intended lives beyond the free delivery limits, its duty is not at an end unless the sender with notice of the claim for additional compensation, has failed or refused on demand to pay it. *Hood* v. *Tel. Co.,* 47 S. E. Rep., 607; *Gainey* v. *Tel. Co.,* 48 S. E. Rep., 653, cited with approval in *Campbell* v. *Tel. Co.,* 74 S. C., 304. There is nothing alleged in the complaint to show that the plaintiff refused after demand to pay such additional charges. On the contrary, it is alleged that all necessary arrangements were made with the defendant through its Rockton agent to deliver the message.

The manner in which defendant was to deliver the message is not explicitly alleged, unless it be involved in the allegation that it was at that time the custom of defendant to deliver messages received by it at Rockton over or by telephone, and that it should have done so in this case. It is alleged that such an agreement would

be void, as contrary to public policy. While the law does not impose upon telegraph companies the duty under their general contract to telephone a message, as that would impair the confidential relations assumed, still it is perfectly competent to enter into a specific contract to so deliver. *Hellams* v. *Tel. Co.*, 70 S. C., 88, 49 S. E., 12.

The complaint charges negligence not only in failing to deliver the message in question, but also in not giving plaintiff prompt notice in the event of such failure It is alleged in the demurrer that there was no consideration for the said return message and information. The complaint alleged payment of the charges for transmission and delivery after an understanding with defendant that notice would be given plaintiff in the event of failure to deliver promptly, and such consideration supports the promise to give notice of non-delivery.

The excptions are overruled and the judgment of the Circuit Court is affirmed.

June 3, 1907. PER CURIAM. After careful consideration of the petition for a rehearing, the Court is satisfied that no material question of law or of fact has either been disregarded or overlooked,

It is, therefore, ordered, that the petition be dismissed, and that the order heretofore granted staying the remittitur be revoked.