## 7040

### MARTIN v. WESTERN UNION TEL. CO.

1. EVIDENCE—PLEADINGS.—Under allegation that a corpse through negligence and wilfulness of telegraph company was delivered to a medical association and delivered to the family in a ghastly condition, evidence as to its condition was competent.

2. IBID.—CUSTOM of telegraph company as to messages for addressees living beyond free delivery limits is not competent unless it is shown the addressee had personal knowledge of the custom or that it was so notorious as to presume knowledge.

3. IBID.—OPINION.—Testimony to the effect that deceased was well known in a certain city and sold medicines there is as to a fact and is not an opinion.

4. IBID.—REPLY.—Evidence of addressee of a telegram that her deceased husband was not addicted to the use of liquor and morphine is competent here in reply to letter of superintendent of hospital where husband died that he died of excessive use of liquor and morphine introduced by defendant.

5. IBID.—On issue of negligence in failure of telegraph company to deliver message beyond free delivery limit, evidence of mail carrier that he knew the address of addressee is competent.

6. TELEGRAPH COMPANIES.—Under the rules of the Western Union Telegraph Company it must use due diligence to ascertain the address of an addressee of a telegram beyond its free delivery limits within a reasonable distance, and if a sufficient fee has not been charged in the first instance to pay for such delivery, it should give the sender an opportunity to pay the additional charges. Under evidence here it is held proper to send to jury the issue of negligence in failing to deliver a message to an addressee without the delivery limits, in the suburbs of a city where the company had delivered messages, the address of the addressee appearing in the city directory, although the company, by service messages, had tried to obtain a better address.

Before HYDRICK, J., Greenville, July term, 1907. Affirmed.

Action by Mary C. Martin against Western Union Telegraph Company. From judgment for plaintiff, defendant appeals.

*Messrs. Geo. H. Fearons, John Gary Evans* and *Joseph A. McCullough,* for appellant. *Messrs. Evans* and *McCullough* cite: *Telegraph company is only responsible for those results reasonably to be anticipated:* 70 S. C., 301. *Custom of the company improperly ruled out:* 29 Ency., 394. *Duty of the company where it has no knowledge of residence of addressee and when he lives in another town:* 77 S. C., 181; 74 S. C., 304; 67 S. W., 766.

*Messrs. Haynsworth, Patterson & Blythe* and *J. P. Carey,* contra, cite: *Evidence responsive to allegations is competent:* 70 S. C., 11; 77 S. C., 174, 378. *Non-expert witness may give his opinion after stating the facts:* 59 S. C., 316; 72 S. C., 259. *Duty of telegraph company upon receipt of message for one living beyond free delivery limits:* 77 S. C., 181; 74 S. C., 304; 48 S. C., 653.

November 16, 1908. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The plaintiff, Mrs. Mary C. Martin, recovered a verdict of five hundred dollars for mental anguish due to the defendant's delay in delivering the following telegram:

"Nashville, Tenn., 17.
"Mrs. J. Hamilton Martin, Greenville, S. C.:

"Your husband died in Nashville City Hospital tonight. Wire me what to do with the body.

"C. H. Goodlet."

These were the uncontested facts appearing from the evidence:

The message was sent from Nashville, Tenn., on 17th October, 1905, and not delivered until called for at the Greenville office on 25th October. In consequence of this delay, Mrs. Martin was not apprised of her husband's death until the receipt of a letter on 25th October. In the meantime the authorities of the hospital where Martin died,

having received no instructions from relatives as to the disposition of his body, turned it over to the State Anatomical Board, as required by the laws of Tennessee. The plaintiff, immediately on receiving information of her husband's death, had the body sent to Greenville, but it was found on arrival to be in such a ghastly condition that she was denied the privilege of seeing it. The plaintiff's residence was not in the city of Greenville, but in Monoghan, a suburb about three miles from the defendant's office. The defendant's agent made considerable inquiry in the effort to find Mrs. Martin and deliver the telegram, and being unsuccessful, by service messages, attempted to get a more definite address from the sender. The defendant's free delivery limit was one mile in every direction from the county courthouse, but the defendant often delivered messages in the suburb of Monoghan, where plaintiff lived. The defendant's agent had in the office a directory which gave the name and street address of Mrs. Martin and her husband; the name of the husband in the directory being given as Jacob H. Martin and the wife's as Mary C. Martin. The telegram was addressed to Mrs. J. Hamilton Martin. Defendant's manager, Brenicke, was uncertain whether he looked in the directory to find the name and place of residence; he thought one of the clerks had examined the directory, but was not sure.

A motion for nonsuit was granted as to the cause of action, based on wilfulness, but refused as to the issue of negligence.

Exceptions one, two, three and four raise the point that evidence should not have been admitted of the condition of the body, as the defendant had no notice that non-delivery of the telegram would result in its being turned over to an anatomical board at Nashville. The complaint alleged the body was so treated because of a failure to deliver the telegram, and no motion was made to strike out the allegation. It was, therefore, not reversi-

ble error to admit the testimony. *Milhous* v. *Ry. Co.,* 72 S. C., 442, 52 S. E., 41; *Mauldin* v. *Ry. Co.,* 73 S. C., 9, 52 S. E., 677; *Harbert* v. *Ry. Co.,* 78 S. C., 551, 59 S. E., 641. If the testimony that many bodies were turned over to the anatomical board had any effect on the issue, it was favorable to the defendant, because it showed there was no peculiar indignity offered to the body of Martin, but only a disposition of it in accordance with a general practice required by the statute of Tennessee.

There was no error in excluding evidence of the defendant's custom or practice when it ascertained that an addressee lived outside of the free delivery limits, on the ground that the custom cannot avail unless it is with the knowledge of the parties to be affected. The rule is that such knowledge must be shown either by evidence of personal knowledge or by evidence that the custom is so notorious, general and well-established that knowledge of it will be presumed. *Heyward* v. *Searson,* 1 Speer, 249, 29 Am. & Eng. Enc., 391.

The statement of the plaintiff that her husband was well known in the city of Greenville, and sold medicines to druggists there, was not objectionable as an expression of opinion, for the testimony was as to facts, not opinions.

The defendant introduced a letter from the hospital superintendent stating that Martin had died from the excessive use of liquor and morphine. This statement, if true, tended to show the wife's respect for her husband, and her grief at being deprived of the privilege of treating his body with tender consideration was less than she alleged it to be; and, therefore, her testimony in reply that he was not addicted to the use of whiskey and morphine was competent.

It is next contended the evidence of the mail carrier, Huff, that he knew where plaintiff lived, should have been excluded. The defendant offered evidence of inquiries

made for plaintiff's address at the postoffice. This evidence of the mail carrier was competent as tending to show that, if still greater diligence had been used by inquiring of him, the address would have been discovered. But the admission or rejection of all testimony of this kind is quite immaterial, because if it be once conceded that, although the plaintiff lived without the free delivery limits of the defendant company, yet the issue of diligence in ascertaining her address is involved, then it will hardly be contended it was not negligence to fail to discover the plaintiff's address in the city directory, where it was plainly set down. Indeed the evidence was by no means clear that the directory on which the manager usually depended was referred to all.

This brings up the main question of the appeal, made by the exceptions to the charge and to the refusal to grant a nonsuit as to the cause of action for negligence, namely, whether the defendant was required to exercise any care at all to ascertain the residence or place of business of an addressee of a telegram, when such residence or place of business is without its free delivery limits, but within a reasonable distance beyond the limits. The defendant had printed on the message form used for this telegram the following undertaking on its part: "Messages will be delivered free within the established free delivery limits of the terminal office. For delivery at a greater distance, a special charge will be made to cover the cost of such delivery." The meaning clearly was that if it turned out the addressee lived beyond the free delivery limit and within a reasonable distance, the telegraph company would nevertheless undertake to deliver the message on payment of the extra charge. It has been held that if from lack of knowledge or other cause the company failed to exact in advance the extra charge for delivery outside the free delivery limits, it must, upon ascertaining the fact of residence beyond such limits, give an opportunity to pay the extra charge. *Campbell* v. *Tel. Co.,* 74 S. C., 300, 54 S. E., 571;

*Lyles* v. *Tel. Co.*, 77 S. C., 174, 57 S. E., 725. By the stipulation above quoted the company contracts not only with reference to the free delivery limits but also with respect to a reasonable distance beyond. The duty to use due diligence to perform its contract with reference to delivery within a reasonable distance beyond free delivery limits is as definite and clear as the duty to use due diligence to perform its contract within the limits. The duty in the latter case is to ascertain the residence or place of business and promptly deliver the telegram; in the former to ascertain the residence or place of business, if within a reasonable distance beyond the limits, and ask for the extra compensation for delivery.

This case illustrates the reasonableness of our construction of the stipulations placed by the defendant in its contract, and the justice of the rule of duty which we think grows out of the contract. The plaintiff lived in the suburb, Monoghan Mills, not only within a reasonable distance beyond the free delivery limits, but where the defendant had often delivered telegrams. Her name as well as her husband's was in th directory of the city of Greenville, and no intelligent person on examining the directory could fail to discover her name and place of residence, except through negligence. The directory seems to have been the first reliance of the defendant's agent for ascertaining the residence or place of addressees of telegrams, and yet the examination of the directory was so carelessly made that this important telegram remained undelivered. There was certainly evidence to go to the jury on the issue of negligence; and the following instruction of the Circuit Judge was a correct statement of the law: "It is, however, the duty of a telegraph company when a telegram is received to exercise reasonable care and diligence to ascertain the residence of the addressee or person to whom it is sent, and if he resides within its free delivery limits, to deliver it free of charge, for that is what it agrees to do; and if such person lives bebeyond its free delivery limits, the company should either

deliver it, if within a reasonable distance from its office and take the risk of being able to collect the extra charge for delivery beyond the limits, or notify the sender of the message by what is called a service message, that the addressee lives beyond its free delivery limits and require either payment or guarantee of payment as it may choose, of the extra cost or expense of delivery beyond such limits."

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.