7327

## LYLES v. WESTERN UNION TEL. CO.

1. TELEGRAPH COMPANIES—EVIDENCE.—In an action against a telegraph company for failure to deliver a telegram announcing the death of sender's husband and requesting preparations for interment of body, it is competent to admit evidence of body lying in the sun at station and in delay of burial, as wife would suffer mental anguish therefrom when it came to her knowledge.

2. CHARGE.—Remarks by trial Judge in ruling on admission of evidence, that a wife with normal feelings would suffer mental anguish upon information of certain acts, is not a charge on the facts.

3. TELEGRAPH COMPANIES—EVIDENCE.—The message in this case being some notice to the company that failure to deliver would probably result in some want of care of the body and some delay in burial, there was no error in admitting evidence as to such results.

4. IBID.—There being no request to charge if sender knew addressee lived beyond free delivery limits and failed to notify the company and to tender additional charges he could not recover for failure to deliver, it was proper to instruct the jury that it is the duty of the company upon receipt of message for an addressee beyond free

1—84

delivery limits to notify sender additional charges are demanded, and upon failure to do so the company was liable.

5. Ibid.—Conversation between mail carrier and telegraph agent as to delivery of an expected death message was properly withdrawn from the jury as evidence of a promise by the company to deliver by mail or phone, except so much as notified the agent the party expected an important death message.

6. Ibid.—Issues—Wilfulness.—Evidence that agent did not mail telegram upon failure to receive prompt reply to his request for additional charges, whose importance had been called to his attention, and that sending office delayed for a long time forwarding to sender the request for additional charges, is sufficient to warrant sending issue of wilfulness to jury.

7. Ibid.—Charge.—Requests here charged that a telegraph company cannot enforce its rules as to free delivery limits unless it informs sender of them and as to waiver of rules were erroneous, but such error was cured by the following general charge.

Before Watts, J., Fairfield, February, 1908. Affirmed.

Action by L. C. Lyles against Western Union Telegraph Company. From judgment for plaintiff, defendant appeals.

*Messrs. Geo. H. Fearons* and *Nelson & Nelson,* for appellant, cite: *Nothing in the message to give notice to company of results of delay:* 73 S. C., 430, 383. *Company may rely upon its reasonable rules without special notice to sender:* 71 S. C., 308. *No testimony as to waiver; error to submit that issue to jury:* 29 S. C., 152; 75 S. C., 529; 15 S. C., 95. *There was no mental anguish resulting from negligence of company:* 75 S. C., 57. *Only long and unexplained delay raises presumption of negligence:* 72 S. C., 257; 73 S. C., 520; 74 S. C., 68; 75 S. C., 186, 208; 76 S. C., 306; 77 S. C., 148, 522; 78 S. C., 109.

*Mr. Marion B. Jennings,* contra, cites: *Plaintiff could suffer for what occurred at the station, although not then present:* 77 S. C., 174; 74 S. C., 301. *Defendant was fully notified:* 77 S. C., 179, 399; 78 S. C., 112; 75 S. C., 512; 73

S. C., 430; 69 S. C., 537. *Could agent make a contract with expected sender of message as to delivery?* 1 L. R. A., 284. *Stating a fact about which there cannot be two opinions is not a charge on the facts:* 73 S. C., 388; 72 S. C., 352; 78 S. C., 505; 81 S. C., 379. *As to recovery of punitive damages:* 70 S. C., 87, 424. *Defendant is guilty of negligence:* 77 S. C., 181; 74 S. C., 304.

October 20, 1909. The opinion of the Court was delivered by

MR. JUSTICE WOODS. On 1st July, 1903, the plaintiff sent from Columbia over defendant's lines this telegram, addressed to J. B. Burley, Rockton, S. C.: "Charlie died today. Meet at Bookman tomorrow." The plaintiff's purpose in sending the message was to notify Burley, her brother, of the death of her husband, and have him to meet the remains at Bookman and provide for interment at a place of burial some distance from the station. This notice was printed on the back of the message as sent from Columbia: "Messages will be delivered free within the established free delivery limits of the terminal office. For delivery at a greater distance a special charge will be made to cover the cost of such delivery." The defendant's agent at Rockton, on receipt of the message, sent to Columbia this service message, dated 1st July, as a statement of the reason for non-delivery:

"Yours date to Burley, signed Lyles, undelivered. Party lives about ten miles in the country." No attempt was made to deliver the service message to the plaintiff, notifying her that her telegram had not been delivered, until the morning of 2d July, and it was not actually delivered until about 6 :30 p. m. on that day.

In the meantime the plaintiff, relying on the delivery of her telegram, had sent her husband's body to Bookman, in charge of friends, on a train which left Columbia at 12 o'clock on the 2d July. As Burley did not receive the death

message he did not meet the body at Bookman, and no arrangements were made for its conveyance to the place of burial or for proper interment. The consequence was that the body of plaintiff's husband remained at Bookman, a small railway station, exposed to the sun for several hours, and was interred late in the night, without the usual burial rites. The plaintiff recovered judgment for mental anguish, alleged to have been suffered by her, due to the defendant's alleged negligent, wanton and wilful breach of duty in failing to deliver the message sent by her, and in delaying the notice of its non-delivery until after her husband's body had been sent to Bookman. The questions raised by the appeal will be considered without referring in detail to the numerous and elaborate exceptions.

There was no error in admitting testimony as to the body lying in the sun at Bookman, and the delay in the burial. It is true the plaintiff was not suffering mental anguish from these things at the time they occurred, for she had no knowledge of them. But, if they were the proximate results of the defendant's breach of duty, there is no reason why she could not recover for the mental anguish suffered when they did come to her knowledge. The remarks of the Circuit Judge, in passing upon the admissibility of this evidence, was not such a statement of facts to the jury as is forbidden by the Constitution. It was not made in the charge, and could not have been prejudicial, because there could be no difference of opinion that a wife, with normal feelings, would suffer mental anguish from the lack of attention to her husband's remains and from such delay in interment as here occurred.

On the former appeal the Court, in disposing of a demurrer to the complaint, held that the message itself was notice to the defendant that delay in the delivery of the message "would probably result in some want of care of the body and some delay in the burial." There is, therefore, no foundation for the exceptions

alleging error in admitting evidence that such lack of proper care and delay actually did result. 77 S. C., 174, 57 S. E., 725, 12 L. R. A., (N. S.), 1040, n.

Burley, the addressee of the original message, lived about ten miles from Rockton; and the Circuit Judge charged the jury: "That where a telegraph company has received for transportation and delivery a telegram, and afterwards discovers that the party to whom same is sent lives beyond its free delivery limits, then it is the duty of the company to notify the sender that additional charges are demanded for the delivery; and if it fails to do so, and its failure is negligent, and that negligence as the proximate cause—results in injury to the person sending the message, or for whose benefit it is sent,—then the company is liable." The defendant excepts to this instruction, taking the position that, as the fact of Burley's residence being ten miles away was known to the plaintiff, and she paid only the charge to Rockton, and failed to notify the defendant and tender the additional charge for delivery beyond the free delivery limits, she could not recover damages for the failure to deliver the message. The instruction was certainly correct, as a general proposition. *Campbell v. Tel. Co.,* 74 S. C., 300, 54 S. E., 571; *Lyles v. Tel. Co.,* 77 S. C., 174, 57 S. E., 725, 12 L. R. A., (N. S.), 1140, n.; *Martin v. Tel. Co.,* 81 S. C., 432, 62 S. E., 833. If the defendant's counsel wished it modified, so as to cover the principles for which they contend, there should have been a request to that effect.

It may be true that good faith requires that the sender of a message, who knows it cannot be delivered within the free delivery limits to any one authorized to receive it, should notify the telegraph company of that fact when he sends the message, and tender any reasonable amount demanded to cover the expense of delivery beyond the free delivery limits. But there can be no doubt that any one expecting an early dispatch may name to the company any person, or any place, within the free

delivery limits, as the place of delivery, and require it to be delivered or tendered to such person or at such place.

In this instance the mail carrier, Elkins, testified that at the instance of Burley he notified the agent at Rockton to deliver the message to Burley by telephone or send it in the mail by the carrier himself, who passed Burley's house every day; that the agent assented to the arrangement, and that he was at the telegraph office on both the first and second days of July. But the instruction was expressly given to the jury to disregard all this testimony, as incompetent, so far as it related to the arrangement with the operator at Rockton, and to consider only such portion as tended to put the operator on notice that an important death message was expected. There is, therefore, no foundation for the exception alleging error in admitting the conversation between Elkins and the operator as evidence of a promise to deliver the telegram by telephone or mail.

Assuming the exclusion of the testimony as to the alleged arrangement to have been proper, it was not error to refuse to direct a verdict or to instruct the jury to find for the defendant, either on the whole case or on the issue as to punitive damages, for there was, nevertheless, evidence from which a wanton disregard of defendant's duty to the plaintiff, resulting in mental anguish, could be inferred. The operator at Rockton, according to his own testimony, received the message at about 3:45 p. m., on the first day of July, notified the Columbia office that Burley lived in the country, and there was no way to get the message to him, and received no answer. The defendant's own rule requires in such case, where a *prompt* reply to the service message is not received from the sending office, that the receiving operator shall mail the telegram to the addressee. The failure to mail, laying aside any special understanding or promise, was a direct violation of the rule of the company with respect to the message, the importance of which was evident on its face, and in addition had been called to the special attention of the operator.

There was evidence of reckless disregard of duty in the defendant's Columbia office, also, in failing to notify the plaintiff of the non-delivery of the telegram. The distance from Rockton to Columbia is only twenty or thirty miles, and there is no reason to doubt that if the prompt notice from Rockton of inability to deliver required by the rules of the company, was sent, it must have reached the Columbia office early in the afternoon of 1st July; whereas, according to the testimony of defendant's own witnesses, no effort was made to extend the notice to Mrs. Lyles until about 11 o'clock on 2d July. Indeed, there was evidence from which the inference might be drawn that no effort was made to extend the notice to her until about 6:45 in the afternoon of 2d July. From this statement of the testimony, it seems evident that it was not error to submit to the jury the issue of wantonness or recklessness, as well as that of negligence.

Before beginning his general charge the Circuit Judge read to the jury all the requests on both sides, and refused to charge requests of the defendant to instruct the jury to find for defendant. With respect to all the other requests, from both sides, he then said to the jury:

"You take all I don't modify to be good law; where I modify, you take that as the law of the case." The managing of numerous requests to charge abstract propositions of law, so as to enlighten rather than confuse the minds of jurors, is a task of extreme difficulty imposed on a trial Judge. When the general charge covers substantially the law applicable to the issue, an appellant court should not grant a new trial on the supposition that the jury were influenced by minor errors or inconsistencies in granting or refusing requests discernible only on careful analysis. We do not think the method adopted here of disposing of requests will be found the safest, but in this instance it did not result in prejudicial error. Giving to the jury plaintiff's sixth request, to the effect that a telegraph company cannot avail itself of its rules as to free delivery limits, unless it imparts to the sender a knowledge of

such free delivery limits, was, we think, clearly erroneous; and there was no foundation in the evidence for the request on the subject of waiver by the telegraph company of its rules. But all this was cured by the following instruction, covering the general principles applicable to the case, in which the Court made it clear that the defendant was entitled to the benefit of its rule as to its free delivery limits, and had a right to demand extra compensation for delivery beyond them: "Now, I charge you, as matter of law, that when the defendant company received this telegram in Columbia, to be sent to Rockton, S. C., if the understanding then between the operator at Columbia, the agent of the defendant company, was that that message was to be delivered to Mr. Burley at Rockton, if that was the understanding, that he was to call for it at Rockton, or it was to be delivered to him at Rockton, and that was the understanding between the sender of the message and the operator who received it at Columbia, then it wouldn't be the duty of the defendant company to deliver it to Mr. Burley beyond the free delivery limits. But if nothing was said, and they received the message, and it was prepaid, then, I charge you, as a matter of law, that our courts have decided the following, and that is the law of the case: When a person to whom a message is addressed resides within a reasonable distance from the company's office, though not within the free delivery limits, it cannot refuse to deliver the telegram unless it demands additional compensation from the sender and he declines to pay it. In other words, that it is the duty of the defendant to notify the sender it wouldn't deliver the message unless he made additional compensation for the service beyond the free delivery limits. I charge you, further, as matter of law, that a telegraph company, failing to make any attempt to deliver the message because the person to whom it was addressed resided beyond the free delivery limits, and also failing to notify the sender, or of its refusal to deliver, is liable in damages resulting from its negligence in not making the delivery. I charge you,

further, that a telegraph company is not exempt from liability merely because the person addressed may chance to live outside of his free delivery limits, because it undertakes expressly and by the very terms of its contract, to make a delivery within those limits free of any charge, and impliedly, at least, to deliver beyond the fixed limits, for which latter service an extra charge is made, not exceeding the amount of the actual costs of such special delivery. I charge you, further, that when a message is received at a terminal office, to which it has been transmitted for delivery to the person addressed, it is the duty of the company to make diligent search to find him, and, if he can't be found, to wire back to the office from which the message came for a better address, and, likewise, it is the duty of the company, when it has discovered that the person for whom the message is intended lives beyond its free delivery limits, either to deliver it by a special messenger or to wire back and demand payment, or a guarantee of payment, as it may choose to do, of the charge for the special delivery; and if it fails to deliver without demanding and being refused payment of the charge, it will be liable for its default."

The judgment of this Court is that the judgment of the Circuit Court be affirmed.