NICHOLAS POLICASTRO, Appellant, *v.* CHARLES S. SPRAGUE COMPANY and Others, Respondents.

First Department, December 1, 1916.

Principal and agent — action against stockbrokers for failing to sell stock as directed — trial — unauthorized amendment to set out "stop-loss order" — erroneous direction of judgment on defendant's counterclaim — duty of broker under stop-loss order — damages.

Under a complaint which seeks a recovery against defendant stockbrokers and which alleges that the plaintiff ordered the defendants to sell stock which the defendants were carrying for him on a margin account whenever the stock reached the price of three dollars per share, it was improper to allow the plaintiff, over objection, to give evidence that he ordered the stocks sold when the price limited in a "stop-loss order" was reached, or to amend his complaint in this respect to conform to the proof.

However, where the jury has settled all questions of fact in favor of the plaintiff, including a finding that at no time could the defendants have

sold the stock for three dollars per share and that the highest price at which it could have been sold was two dollars and fifty cents per share, it was error for the court to direct a verdict for the defendants upon their counterclaim for the difference between the amount charged against the plaintiff for the purchase of the stock and the amount received on a sale of said stock at one dollar and fifty cents per share, on the theory that if the broker could have sold it for two dollars and fifty cents the plaintiff could have done so and should have done so under his duty to minimize the damage. This, because the stock purchased on a margin being in the possession and subject to the control of the brokers as security for their advances, there was no way in which the plaintiff could legally sell and deliver the same, except by redeeming the stock from his brokers which he was not required to do.

On a stop-loss order where a customer directs brokers to sell stocks when they arrive at a certain price, the broker must sell at that price if possible, or at whatever price it is possible to sell thereafter, and the rule of damages, where it is found that the stock could have been sold at a specific price less than the stop-loss order, is the difference between the amount for which the stock could have been sold and the amount of the debit on the broker's account against the customer.

APPEAL by the plaintiff, Nicholas Policastro, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 29th day of March, 1916, upon the verdict of a jury rendered by direction of the court after certain questions submitted had been answered by the jury, and also from the order entered in said clerk's office on the 28th day of March, 1916, directing the verdict.

*Neil P. Cullom,* for the appellant.

*Louis J. Vorhaus,* for the respondents.

PAGE, J.:

The action was brought by the plaintiff to recover damages alleged to have been sustained by reason of the failure of the defendants, a firm of stockbrokers, to sell stock when the price limited in a stop-loss order was reached. The defendants had purchased and were carrying on a margin account for the plaintiff 7,000 shares of the Jumbo Extension Mining Company stock. On December 1, 1914, the plaintiff testified that he gave a stop-loss order at three dollars per share. The defendants did not sell the stock and continued to carry it until the

fifth and sixth of January, when the stock was sold at an average price of one dollar and fifty cents per share. The defendants claim that the order that was given them to sell was not a ·stop-loss order, but an order to sell at three dollars per share and that it was impossible to sell the stock when and at the time it reached three dollars per share, and that subsequently the plaintiff ratified and confirmed their failure to sell and that the sale of 5,000 of the shares of the stock made in January was at the plaintiff's direction, and further, the 2,000 shares were sold because of plaintiff's failure to further margin his account. No useful purpose would be served by reviewing the evidence. The trial was conducted with entire disregard of the pleadings or of the relevancy of the testimony to the issues involved. The complaint alleged that the plaintiff ordered the defendants to sell the stock at and whenever the stock reached three dollars per share. The defendants denied that they ever received or accepted such an order. The plaintiff was improperly allowed to amend his complaint by alleging a stop-loss order to conform to proof, although the evidence had been received over defendants' objection and exception; also evidence was received tending to show that the defendants had accepted the order alleged in the complaint and had in good faith attempted to sell the stock at three dollars per share, and also ratification, although no such defense was set up in the answer.

The court submitted special questions of fact to the jury which, with the answers, are as follows: "1. Q. Was the order given by the plaintiff an order to sell the 7,000 shares of stock when it declined to $3 per share, at $3 or at the best obtainable price thereafter? A. Yes. 2. Q. After the stock reached $3 per share, and prior to December 3rd, could the defendants, in the exercise of reasonable care, have sold said 7,000 shares at $3? A. No. 3. Q. If you find that they could not have sold said 7,000 shares at $3, could they have sold any part thereof at that price, and if so, how much? A. No. 4. Q. At what price could the said 7,000 shares have been sold after the stock reached $3 per share and before December 3rd? A. $2.50 per share. 5. Q. At what price could said 7,000 shares have been sold within a reasonable time after the

plaintiff was notified that the stock had not been sold ? A. $2.50 per share. 6. Q. Did the plaintiff, after being notified that the defendant had not sold the stock, cancel the order or ratify the act of the defendants in not selling? A. No." It thus appears that the controverted questions of fact were all settled in favor of the plaintiff. Nevertheless, the trial justice granted judgment in favor of the defendants upon their counterclaim for the difference in the amount charged against the plaintiff for the purchase of the stock and the amount that was received on the sale of the stock, one dollar and fifty cents per share, the theory of the trial judge being that if the brokers could have sold at two dollars and fifty cents per share the plaintiff could have done so, and that it was the duty of the plaintiff to minimize the damage and having failed to do so he was not damaged. In this the learned trial judge erred. This was not a case where a principal having title to and possession of personal property directs an agent to sell the same. . On the failure of the agent in such a case, the principal having the property in his possession is required to sell it himself if he intends to hold the agent liable for damages. The stock was in the possession and subject to the control of the brokers, pledged to them as security for their advances. There was no way in which the plaintiff could legally sell and deliver the stock except by going into the open market and buying, or by redeeming this stock from the possession of the brokers. This he was not required to do. On the stop-loss order such as the jury has found this to be, which directs the brokers to sell the stocks when they arrive at a certain price made by some third person, the brokers must sell at the price, if possible, or at whatever price it is possible to sell thereafter, and the rule of damage to be applied in this case, the jury having found that the stock could have been sold at $2.50 per share, is the difference between $17,500 and the amount of the debit on the brokers' account against the plaintiff which was conceded to be $13,912.20. (See *Allen* v. *McConihe*, 124 N. Y. 342-348; *Rogers* v. *Wiley*, 131 id. 527, 536; *Campbell* v. *Wright*, 118 id. 594, 602; *Porter* v. *Wormser*, 94 id. 431.) Because of the condition of the record we cannot give judgment but should grant a new trial. Before the next trial the parties may be enabled

to get their pleadings in shape to present the issues they desire to litigate.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

. CLARKE, P. J., SCOTT and DAVIS, JJ., concurred; SMITH, J., concurred in result.

Judgment reversed, new trial ordered, costs to appellant to abide event.