EDGAR GIBBS MURPHY, Appellant, *v.* FRANCIS C. BISHOP and WILLIAM LAIMBEER, Copartners Doing Business under the Firm Name and Style of BISHOP, LAIMBEER & COMPANY, Respondents.

First Department, May 3, 1918.

Principal and agent — stockbrokers — duty to execute stop loss order — attempt to execute order through other broker — when brokers responsible for loss caused by agent employed by them — new trial.

Where the customer of a stockbroker carrying stocks on margin gives to her brokers a so-called "stop loss order" to sell stocks when they reach a certain price it becomes the duty of the brokers to sell the stock at the best price offered on the exchange as soon as there is a sale of like stock at the price set by the customer.

Where, in an action against stockbrokers to recover for a loss occasioned by their failure to execute a stop loss order given by the plaintiff, it appears that the defendants on receiving the order placed the same in the hands of another broker for execution and that he attempted to make a sale which, being made without the authority of the supposed buyer, was repudiated by the latter, with the result that the stock was subsequently sold at less than the price set by the plaintiff, it was error to dismiss the complaint upon the merits and grant judgment for the defend-

ants on a counterclaim, for the broker who attempted to make the sale was the agent of the defendants to whom the plaintiff gave the order and was not the plaintiff's agent so that the defendants are responsible for the loss.

However, when it is impossible to tell from the record the best price obtainable for the stock immediately after it reached the price set by the plaintiff the Appellate Division cannot direct judgment for the plaintiff, but will order a new trial.

APPEAL by the plaintiff, Edgar Gibbs Murphy, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 11th day of January, 1915, upon the verdict of a jury rendered by direction of the court dismissing the complaint upon the merits and granting defendants' judgment on their counterclaim.

*Vance Hewitt* of counsel [*Enos S. Booth,* attorney], for the appellant.

*Samuel H. Ordway* of counsel [*Spencer, Ordway & Wierum,* attorneys], for the respondents.

LAUGHLIN, J.:

The defendants constituted a firm of stockbrokers and plaintiff was one of their customers. In the month of May or June, 1909, the defendants bought for plaintiff's account 100 shares of the common stock of the Columbus and Hocking Coal and Iron Company, which was listed and traded in on the New York Stock Exchange, and carried the same for him on margin. About two months later, when the stock had gone up nearly twenty points and was selling at seventy-six dollars or seventy-seven dollars per share, he gave them an order known as a stop or stop loss order to sell it at seventy-one dollars per share, the order to continue in force until executed by them or canceled by him. He did not cancel it. It thereupon became the duty of the defendants to sell the stock at the best price offered on the floor of the Exchange as soon as there was a sale of like stock on the Exchange at seventy-one dollars per share or less. (See *Policastro* v. *Sprague Co.,* 175 App. Div. 417, 420; *Porter* v. *Wormser,* 94 N. Y. 431, 444; 1 Dos Passos Stock & Stockb. [2d ed.] 297, 302, 305.) Like

stock was sold on the floor of the Exchange at that price on the morning of the 19th of January, 1910. This action was brought to recover the damages sustained by plaintiff through defendants' alleged failure to execute the order, and they counterclaimed for a balance alleged to be owing on the account on the theory that they had performed their full duty to plaintiff. The plaintiff, however, instead of resting on the breach of contract, as well he might, charged not only a breach of duty under the contract but that the failure of the defendants to sell the stock was due to their negligence and to their participation in a combination between one James R. Keene and stockbrokerage firms to keep the price of the stock up and that on said nineteenth of January they reported to plaintiff that the stock had been sold at seventy-one dollars per share, and later in the day notified him that the sale had been made to Messrs. Day, Adams & Co., which they represented to be solvent, and that thereafter the price fell to twenty-five dollars per share, and they then notified him that the stock had not been sold. These facts were uncontroverted. The defendants, however, alleged that before they reported the sale to plaintiff as having been made to Day, Adams & Co. they had reported it as made to Roberts, Hall & Criss, and later notified plaintiff that the last named firm had notified them that the sale was to the other firm; but they alleged that Day, Adams & Co. did not in fact purchase the stock, and repudiated all responsibility with respect to the purchase thereof. The answer does not otherwise show to whom the stock was sold or whether it was sold to any one unless a sale to Roberts, Hall & Criss is to be inferred from other allegations to the effect that the failure of that firm was announced on the floor of the Exchange next day and in accordance with the rules of the Exchange, and that with the consent of the plaintiff the defendants thereupon sold the stock at the market for twenty-five dollars per share for the account of the insolvent firm.

The defendants showed that when they received the stop order from plaintiff they placed it in the hands of one Criss, a specialist in the stock and member of the Exchange and of the firm of Roberts, Hall & Criss, for execution, and that on the nineteenth of January he reported the sale of the stock

at seventy-one dollars. Criss testified that the stockbrokerage firm of Lathrop, Haskins & Co. gave him a verbal order for another firm, the name to be given upon execution, to buy 200 shares of the stock at seventy-one and that when it " touched 71," that is, sold at that price, having orders to buy and sell, he bought and sold; that one of the buyers at that price whose name was given up to him by Lathrop, Haskins & Co. was Day, Adams & Co., and that was his only authority for purchasing for them, but that he recorded the sale as made to them and so reported it to them, to Lathrop, Haskins & Co. and to defendants. That was the only sale made by him in the execution of the plaintiff's order, and on the allegations of the answer that the purchase was not authorized, it was no sale. After the close of the Exchange that day defendants sent to Day, Adams & Co. the usual duplicate slips showing the sale as having been made by defendants to them, through Roberts, Hall & Criss, for comparison and signature, which would constitute the formal evidence of the contract, but Day, Adams & Co. claimed that they knew nothing about it and suggested that defendants send again later, which they did, with like result; and next morning Day, Adams & Co. restated to defendants' representative that they knew nothing about the matter and had given no order to buy the stock, and they refused to compare or sign the slips. In the meantime notice of the failure of Criss's firm had been given on the Exchange that morning. Defendants' manager then telephoned plaintiff communicating these facts and asking instructions. He gave none, but stood on his rights under their report to him that the sale had been made. Defendants thereupon in accordance with the rules of the Exchange for determining the amount of the liability of a broker who has failed to another, sold the stock at twenty-five dollars per share and presented a claim against Criss's firm for $4,600, being the difference between the proceeds on a sale at seventy-one dollars and at twenty-five dollars, and subsequently settled the claim for half and gave plaintiff credit therefor and for the proceeds of the sale.

It appears that Criss and his firm were reputable brokers and in good standing. It was customary for brokers to employ specialists to execute orders for their customers and

to pay them a commission of two dollars per 100 shares; but that was merely for their own convenience in order that their floor member might attend to the execution of other orders. It is contended by the learned counsel for the respondents that his clients are not liable for the negligence of Criss in failing to obtain authority from Day, Adams & Co. to purchase the stock for them before assuming to buy for them, or, in other words, for failing to make an effective sale by which plaintiff would obtain a valid enforcible contract. That depends on whose agent Criss was in making the sale. The plaintiff neither employed him nor authorized his employment. Of course, the plaintiff authorized the defendants to do whatever was necessary to execute the order but the defendants undertook to execute the order for a definite commission prescribed by the rules of the Exchange. and well understood. It seems quite clear to me, therefore, that Criss was the agent of the defendants in selling the stock which the plaintiff employed them and them only to sell, and that notwithstanding their employment of Criss they remained liable to the plaintiff for the due execution of his order. (*Evans* v. *Wrenn,* 93 App. Div. 346; *Montgomery County Bank* v. *Albany City Bank,* 7 N. Y. 459, and *McBride* v. *Illinois Nat. Bank,* 163 App. Div. 417.)

The facts of this case present for decision no point relating to the liability of brokers to their customer where they have duly executed his orders, but the broker to whom they sold or from whom they purchased, or his customer, failed or repudiated the contract before delivery. It does not appear whether the rules of the New York Stock Exchange authorize a broker to represent both the buyer and seller, and where he had an order to buy and another to sell at the same price to cross the orders by mere bookkeeping entries, as was done here, without even offering the stock or bidding therefor on the floor of the Exchange. But, as we view the case, that is not material, for if it be authorized or permitted he must, in the performance of his duty to the seller, see to it that he has authority to represent the purchaser for whom he assumes to act. Since Criss was the agent of the defendants in making the sale the case is precisely the same as if one of the defendants had executed the order in the

same manner, assuming to purchase for one who had not authorized it. It is quite obvious that such an execution of the order would not discharge the duty owing by the brokers to their customer and they would be liable to him not for the sale involving an unauthorized purchase but for a sale such as they could and should have made in duly executing his order. They were not obliged to find a purchaser at seventy-one; but they were obliged to sell at the best price obtainable from someone desiring to buy as soon as any of the stock sold at seventy-one. It follows that the court erred in directing the verdict in favor of defendants; but the record does not disclose the other sales of the stock and, therefore, we are unable to say at what price defendants should have sold and cannot direct judgment for plaintiff.

It follows that the judgment should be reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.