## 11537

### ALEXAS v. POST & FLAGG

(123 S. E., 769)

1. BROKERS—NO TIME LIMIT TO CUSTOMER'S "STOP ORDER."—Under telegram to broker, "Sell 5 Dec. Corn stop loss 144," there was no time limit to stop order, and brokers were authorized to close out contract at any time during its life that price reached 144, a "stop order" being a direction by customer to his broker that, if commodity touches price named, broker shall close trade at best available price.

2. BROKERS—MUST CLOSE TRANSACTION WHEN PRICE LIMIT STATED IN STOP ORDER HAS BEEN REACHED.—The duty is imperative on a broker to close transaction when price limit stated in stop order has been reached, and, if he fails to do so, customer may recover loss sustained by such failure.

3. CUSTOMS AND USAGES—EVIDENCE OF USAGE NOT ADMISSIBLE TO VERY UNAMBIGUOUS CONTRACT, UNLESS TERMS HAVE ,ACQUIRED MEANING' DIFFERENT FROM PRIMARY MEANING.—Evidence of custom or usage is not admissible to explain or vary an express, unambiguous contract, unless it is shown certain terms have acquired by well-established custom or long usage a meaning different from that which they primarily bear.

Before TOWNSEND, J., Greenwood, October, 1923. Affirmed.

Action by N. Alexas against Post & Flagg. From a judgment entered on a directed verdict in favor of defendants, plaintiff appeals.

*Messrs. Mays & Featherstone,* for appellant, cite: *Where contract is in trade terms, and facts as to its meaning is conflicting, question of meaning is for the jury:* 13 C. J., 788; 71 Sou., 70; 17 L. Ed., 185; 35 S. W., 25; 10 R. C. L., 1072; 122 S. C., 314. *Where contract is incomplete omission may be explained by parol:* 10 R. C. L., 1032;

Note: On admissibility of evidence of custom to create an exception to a written contract, see note in 3 L. R. A. (N. S.), 248.

On duty of stock broker to close transaction when price limit stated on stop order has been reached, see subdivision of note in L. R. A. 1917C, 157, 158.

11 A. S. R., 920. *Rule as to words used in peculiar trade sense:* 17 C. J., 498; 13 S. C., 267; 7 D. C., 105; 18 Mo., 509; 53 N. Y. Supp., 1021; 17 C. J., 499. *Evidence of usages allowed not only to explain but to add to a contract:* 17 C. J., 501; 48 Sou., 105; 47 Am. Rep., 163; 34 Md., 144; 70 Pac., 975; 107 N. Y. Supp., 560. *Party not bound to abandon right to minimize damages:* 17 C. J., 774; 90 S. C., 507; 102 S. C., 452.

*Messrs. Grier, Park & McDonald,* for respondent, cite: *Custom must be certain and uniform:* 27 R. C. L., 155, 158, 160; 17 C. J., 451; 458 Mills Rep., 150; 2 McC., 79; 31 S. C., 455. *Evidence of custom or usage cannot vary terms of an expressed contract:* 47 S. C., 243; 68 L. Ed., 292. *Stop order defined:* 4 R. C. L., 282; 22 L. R. A. (N. S.), 181; 9 C. J., 529; 23 N. E., 914; 94 N. Y., 431; L. R. A., 1917, 757; 161 N. Y. Supp., 912; 75 Am. Dec., 321. *Breach of arbitration agreement would result in only nominal damages:* 270 Fed., 583; 102 Fed., 1005; 6 Ves., 815. *Evidence as to arbitration inadmissible:* 105 S. C., 304; 36 S. C., 65; 45 S. C., 184; 56 S. C., 96; 57 S. C., 358; 82 S. C., 465; 88 S. C., 2; 102 S. C., 130.

July 7, 1924.

The opinion of the Court was delivered by Mr. JUSTICE COTHRAN.

Action for $2,375 damages alleged to have been sustained through the failure of the defendants to carry out the plaintiff's instructions with reference to the sale of corn for future delivery on the Chicago Board of Trade.

The facts are as follows:

On July 9, 1920, the plaintiff, Alexas, living at Greenwood, S. C., wired the defendants, Post & Flagg, brokers, doing business in the City of New York: "Sell 5 Dec. Corn stop loss 144." It is conceded that the first part of the telegram was an order for the defendants to sell for the

account of the plaintiff 5,000 bushels of corn for delivery in the month of December; the controversy involves the meaning of the latter part "stop loss 144," as will be seen.

The defendants accepted the order and sold for account of the plaintiff, on the Chicago Board of Trade, 5,000 bushels of corn for December delivery at $1.39½ per bushel. On the following day the market price reached $1.44 per bushel, and the defendants, as they supposed, complying with the stop order of the plaintiff, closed the transaction in the usual way by buying a similar contract, which entailed a loss of 4½ cents per bushel, $225, upon the plaintiff. This occurred on July 10th. The defendants did not notify the plaintiff by wire of the latter transaction, but wrote him by mail, which the plaintiff claims he did not receive until July 14th, at which time he replied by wire repudiating the transaction upon the ground that the defendants had not notified him by wire. Thereafter there was correspondence between the parties, the plaintiff taking the position that his opening telegram, so far as the stop order was concerned, was limited to the day upon which it was sent, and that the original selling contract was still in force. In September the price of corn had fallen to 96 cents per bushel, and the plaintiff wired the defendants to close the original contract by buying at that figure. The defendants, standing upon their contention that they were authorized to close the contract on July 10th at $1.44, refused to recognize that the plaintiff had an open contract as claimed. The plaintiff bases his claim on the difference between $1.39½ and 96, 43½ cents per bushel on 5,000 bushels, $2,175, and $225 loss charged to him, making $2,400, which, however, he places at $2,375.

The case turns upon the construction of the words in the telegram of July 9th: "Stop loss 144." The plaintiff contends that he meant that, if the price reached 144 on that day, July 9th, the defendant should close him out, and he would take his loss, and that the usage of trade confirms

his interpretation.    The defendants contend that there was
no limit to the stop order, and that they were bound to close
out the contract at any time during its life that the price
reached 144.

His Honor, the presiding Judge, sustained the contention
of the defendants, and directed a verdict in their favor.
From the judgment entered thereon the plaintiff has ap-
pealed.   We are of opinion that the Circuit Judge was en-
tirely right in his construction of the contract, and that the
judgment must be affirmed.   The language upon its face
is unambiguous and perfectly clear; and how the defend-
ants could have divined that the plaintiff meant something
which he did not express we are unable to see.

A "stop order" is a direction given by the purchaser or
seller, as the case may be, to his broker, to the effect that,
if the commodity on the market touches the price named,
the broker shall close the trade by selling or buying, as the
case may be, at the best available price.   It may not be pos-
sible for the broker, when the price has reached the "stop"
figure, to close out at that price, but he must do the best
he can at that moment.   It is a measure of protection which
the operator provides for himself against loss beyond a cer-
tain point in a fluctuating market, and it is the duty of the
broker who accepts a contract under such conditions to com-
ply with the instructions.   It obviously is entirely distinct
from the matter of margins already put up or that may be
called for.   The operator has settled that matter for him-
self, regardless of the question of margins; he in effect
directs the broker to close him out when the market reaches
a certain price upon the best available terms, and he will
accept his loss or profit accordingly; it is playing a com-
paratively safe game; at least he is putting a curb upon his
own spirit of speculation.   Why that cautious spirit should
be limited to the day of initiation no sound reason has been
suggested.   *Hall v. Paine,* L. R. A., 1917C, 757; 9 C. J.,
539.   *Richter v. Poe,* 109 Md., 20; 71 Atl., 420; 22 L. R.

A. (N. S.), 181. *Campbell v. Wright,* 118 N. Y., 594; 23 N. E., 914.

The duty is imperative upon the broker to close the transaction when the price limit has been reached; if he should fail to do so, the customer may recover the loss sustained by such failure. *Policastro v. Sprague,* 175 App. Div., 417; 161 N. Y. Supp., 912; note, 75 Am. Dec., 321. In the absence of a very clear showing that the stop order was effective only for the day of the initiation of the contract, it should be considered as a standing order as long as the contract had life.

The plaintiff undertook to show that by the usage of the trade his contention should be sustained. He produced but a single witness who testified that according to his interpretation the stop order was limited to the day; he, however, admitted that a majority of the brokers who did business on the Chicago Board of Trade took a different view.

The rule is settled in this state and everywhere else that—

"Evidence of custom and usage is not admissible to explain or vary the terms of an express contract, whether written or verbal, unambiguous in its terms, unless it be to show the meaning of certain terms used in such contract which, by well-established custom or long usage, have acquired a meaning different from that which they primarily bear." *Fairly v. Wappoo Mills,* 44 S. C., 227; 22 S. E., 108; 29 L. R. A., 215. *Thomas v. Graves,* 1 Mill. Const., 308. *Patton v. Magrath,* Dud., 159; 31 Am. Dec., 552. *Hayward v. Middleton,* 3 McCord, 121; 15 Am. Dec., 615. *Martin v. Tel. Co.,* 81 S. C., 432; 62 S. E., 833; 27 R. C. L., 155, 158, 160; 17 C. J., 451, 458.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MESSRS. JUSTICES WATTS, FRASER and MARION concur.

MR. CHIEF JUSTICE GARY did not participate.